AUSA: Ryan Particka  Telephone: (313) 226-9635
AO 91 (Rev. 11/11) Criminal Complaint    Special Agent: Nathan Loosvelt  Telephone: (313) 226-2939

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
v.
MICHAEL GERARD CURRIE

Case No.  Case: 2:22−mj−30293
Assigned To : Unassigned
Assign. Date : 7/5/2022
USA V. SEALED MATTER (CMP)(CMC)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Novermber 2021__ in the county of __Macomb/Oakland__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18, U.S.C § 641 | Theft of Government Funds |
| 18, U.S.C. § 1957 | Engaging in monetary transactions in property derived from specified unlawful activity |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Nathan Loosvelt - Special Agent
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: July 5, 2022

*Judge's signature*

City and state: Detroit, MI

Kimberly G. Altman - U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Nathan Loosvelt, Special Agent for the Treasury Inspector General for Tax Administration (TIGTA), being duly sworn, state as follows:

## INTRODUCTION AND AFFIANT BACKGROUND

1. I am a Special Agent of the TIGTA and, as such, an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18 and Title 26 of the United States Code.

2. I have been a Special Agent with the Treasury Inspector General for Tax Administration (TIGTA) since June 2016. I am presently assigned to the Detroit Field Office, Detroit, MI post of duty. Prior to becoming a Special Agent at TIGTA, I worked as a Special Agent (and Police Officer) with the Department of Defense Pentagon Force Protection Agency (since 2006). I earned a Bachelor's degree in Political Theory and Constitutional Democracy and a Master's degree in Law Enforcement Intelligence and Analysis from Michigan State University. I have received law enforcement training at the Federal Law Enforcement Training Center (FLETC) and have previously investigated various federal crimes. At all times during the investigation described in this

affidavit, I have been acting in an official capacity as a Special Agent of the TIGTA.

## PURPOSE OF AFFIDAVIT

3. This affidavit is submitted for the limited purpose of obtaining a criminal complaint and arrest warrant for MICHAEL GERARD CURRIE, and thus does not set forth all of the information known to your affiant.

4. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that MICHAEL GERARD CURRIE has violated both Title 18 U.S.C § 641 (Theft of government funds); and Title 18 U.S.C. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).

## BACKGROUND

5. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that CURRIE, a resident of the Eastern District of Michigan, is responsible for converting to his use, without authority, money of the United States within the Eastern District of Michigan. There is also probable cause to believe that CURRIE knowingly engaged in at least one monetary transaction in the Eastern District of Michigan involving criminally derived property of a value

greater than $10,000, and that the funds were derived from specified unlawful activity.

6. This affidavit is submitted for securing a criminal complaint and arrest warrant; therefore, this affidavit does not contain every fact that I have learned during the course of the investigation. I have only set forth the facts necessary to establish probable cause to believe that CURRIE violated the statutes identified above. The information contained in this affidavit is based upon my personal knowledge, training and experience, as well as the combined knowledge, training and experience of other law enforcement officers and agents with whom I have had discussions related to the investigation.

7. Title 18 U.S.C § 641 criminalizes embezzling, stealing, purloining, or knowingly converting to his use or the use of another, or without authority, selling, conveying or disposing of any record, voucher, money, or thing of value of the United States.

8. Title 18 U.S.C. § 1957 criminalizes knowingly engaging in monetary transactions in criminally derived property of a value greater than $10,000, which is derived from specified unlawful activity. As defined by Title 18 U.S.C. § 1946, Theft of Government Funds in violation of Title 18 U.S.C § 641 constitutes "specified unlawful activity."

9. In March 2020, U.S. President Donald Trump signed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act, passed by the 116th Congress in response to the economic declined caused by the COVID-19 pandemic.

10. The CARES Act Employee Retention Credit administered by the IRS is a refundable tax credit equal to 50% of the qualified wages an eligible employer pays to employees after March 12, 2020. The eligible employers could get immediate access to the credit by reducing their employment tax deposits or requesting a refund on the IRS Form 941, Employer's Quarterly Federal Tax Return.

## **PROBABLE CAUSE**

11. This joint investigation conducted by the TIGTA, the Federal Bureau of Investigation, and the U.S. Postal Office of Inspector General.

12. On January 18, 2022, a TIGTA Special Agent interviewed an investigator at JP Morgan Chase Bank. The investigator disclosed JP Morgan Chase had deposited a suspected fraudulent $1,504,163.43 U.S. Treasury check made payable to Burgerflex North America Inc. (herein known as Burgerflex) at an address in Fenton, MI 48430 on October 04, 2021. The investigator believed that the deposit was likely fraudulent because Burgerflex was registered with the State of Michigan over a month after

the check was issued, and the business located at the address in Fenton, MI, was named Burgaflex North America Inc. The Burgerflex JP Morgan Chase account was opened online in the name of Kelvin Baskin. Among the first attempted transactions from the Burgerflex account, included an attempted transfer to CURRIE. JP Morgan Chase ended the relationship with Burgerflex on October 25, 2021, mailing a $1,504,164.43 cashier's check to 25140 Lahser Road STE 222, Southfield, MI 48033. On October 27, 2021, a JP Morgan Chase account was opened in the name of MGC Home Improvements LLC with signer CURRIE. After two small cash deposits, CURRIE deposited $450,000 worth of Bank of America cashier's checks with the remitter being Burgerflex. The Burgerflex funds were depleted via online and retail payments and large cash withdrawals. The bank investigator spoke with CURRIE who claimed that Burgerflex was a home improvement company.

13. On January 19, 2022, a TIGTA Special Agent interviewed Burgaflex North America Inc.'s Chief Financial Officer (CFO). The CFO provided that Burgaflex was expecting a refund of approximately 1.5 million dollars relative to the Employee Retention Credit claimed on an IRS Form 941, Employer's Quarterly Federal Tax Return. The CFO

contacted the IRS and the IRS told the CFO that the check had been mailed. However, the check was never received by Burgaflex. The CFO provided he did not know CURRIE nor Kelvin Baskin, and neither is associated with official Burgaflex business.

14. Bank of America records disclose that on November 9, 2021, Currie opened Bank of America account xxxxxxxx1566 in the name of Burgerflex North America Inc. The IRS Employer Identification Number (EIN) given to Bank of America by CURRIE to open the business bank account was 87-3224998. This EIN was obtained on October 22, 2021, through the IRS Modernized Internet Employer Identification Number Application accessible through the IRS website of www.IRS.gov. On the same day the Bank of America account xxxxxxxx1566 was opened, CURRIE deposited the $1,504,164.43 JP Morgan Chase cashier's check. The personal address CURRIE provided Bank of America during the account opening process was 24633 Grove Avenue, Eastpointe, MI 48021.

15. Bank of America records disclose that daily online accesses between November 9, 2021, and November 12, 2021, into account xxxxxxxx1566 were made from AT&T U-verse Internet Protocol (IP) address 99.44.201.5. On February 28, 2022, AT&T U-verse provided subscriber

records that disclose that IP address 99.44.201.5 was assigned to CURRIE at 24633 Grove Avenue, Eastpointe, MI 48021 on July 13, 2021.

16. In addition, the Burgerflex funds were used extensively at casinos or to purchase luxury goods, to include a $59,000 purchase of jewelry (specifically, two diamond-encrusted Rolex watches—one for $27,500 and one for $31,500) by CURRIE on November 24, 2021, and to make purchases at Gucci and Prada in Beverly Hills, CA.

17. A review of bank security surveillance video from JP Morgan Chase Bank, on October 4, 2021, revealed that when the Burgaflex U.S. Treasury check was deposited, it was done so by an individual using the bank's drive through window. The suspect was driving what appears to be a newer model white Dodge Caravan. Records indicate that CURRIE has a 2019 white Dodge Caravan registered to him in Michigan.

18. Physical surveillance of a residence belonging to a known associate of CURRIE, where it is believed CURRIE periodically stays, revealed a white Dodge Caravan in the driveway. During surveillance, CURRIE was seen getting into and driving off in the vehicle. Also observed in the driveway in the residence was a 2020 Cadillac Escalade. Investigation revealed the vehicle is registered to CURRIE's known associate.





19. Additional bank security surveillance video, from both JPMorgan Chase, and Bank of America revealed multiple videos of banking transactions conducted by CURRIE from bank accounts connected to the Burgerflex Treasury Check and subsequent JPMorgan Chase cashier's check.



20. While conducting ATM banking transactions at both JPMorgan Chase and Bank of America, CURRIE is seen driving what appears to be his known associate's Cadillac Escalade.

21. Related to the Burgerflex scheme, on April 19, 2022, a review of Huntington National Bank records revealed that on September 23, 2021, CURRIE deposited a $35,069 U.S. Treasury check made payable to Steadfast Tool & Machine Inc. into a Huntington National Bank account xxxxxx3876 via ATM deposit.

22. On April 20, 2022, a TIGTA Special Agent interviewed Steadfast Tool & Machine Inc.'s business manager. The manager disclosed that they have been expecting a $35,069 employee retention credit refund since approximately July or August 2021. The manager does not know CURRIE and did not authorize CURRIE to deposit the refund check.

23. Additional bank security surveillance video from Huntington National Bank show Currie withdrawing $4,000.00 one day after he deposited the Steadfast Tool & Machine Inc. Treasury check into said account.



## CONCLUSION

Accordingly, for the reasons stated above, your affiant believes that probable cause exists that MICHAEL CURRIE has violated both Title 18, U.S.C § 641 (Theft of Government Funds); and Title 18, U.S.C. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).

Respectfully submitted,

_____
Nathan Loosvelt
Special Agent
Treasury Inspector General
for Tax Administration

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
Kimberly G. Altman
United States Magistrate Judge

Dated: Detroit, Michigan